OPINION
{¶ 1} Defendant-appellant, Joshua A. Liddy ("Liddy"), appeals his conviction of abduction, a felony of the third degree in violation of R.C. 2905.02(A)(2), following a jury trial in the Ashtabula County Court of Common Pleas, at which time Liddy was also found guilty of assault, a misdemeanor of the first degree in violation of R.C. 2903.13(A). The trial court imposed a sentence of three years in prison for the abduction conviction and six months imprisonment for the assault conviction, to be served concurrently. For the following reasons, we affirm Liddy's conviction for abduction.
 {¶ 2} On the morning of February 16, 2002, Gail Petrinski ("Petrinski"), accompanied by her brother, Mark Orchard ("Orchard"), went to a house, converted into apartments, at 230 South Broadway in Geneva, Ohio. Paul Douglas Brunelle ("Brunelle") lived in one of the ground floor units. Brunelle's apartment had two doors; a "back door" leading directly outside and a "front door," which was accessible from a common hallway within the house. Petrinski and Orchard were looking for Petrinski's fourteen-year-old daughter, Emily ("Emily"), whom Petrinski believed Brunelle was dating. Petrinski asked Orchard to accompany her in order to watch both doors, in case Emily was at the apartment and tried to leave by the back door. Petrinski knocked on the front door but no one responded. Thinking she heard voices inside the apartment, Petrinski called the police.
 {¶ 3} Officer Christopher L. Cahill ("Officer Cahill") of the Geneva Police Department and another officer ("Officer Smoot") responded to the call. The officers knocked on the front door but there was no response. Officer Cahill knew that the woman renting the apartment in which Brunelle was staying was being held in the city jail. Officer Cahill left the scene to obtain permission to enter the apartment. Officer Smoot remained with Petrinski and Orchard until he was called away to respond to a report of domestic violence in progress. Officer Smoot told Petrinski to remain at the apartment until he returned. Petrinski went back to her car where she could view the back door. Orchard remained inside the common hallway.
 {¶ 4} At this time, Liddy was walking to the apartment with two nieces to ask if Brunelle wanted to breakfast with them. Liddy knocked on the back door and then went around to the inside door. Liddy testified that seeing Petrinski's car made him suspicious because he did not recognize the car. Liddy also testified that, when he entered the hallway, he saw Orchard leaning against Brunelle's door and doing something to the deadbolt lock. Liddy described Orchard's appearance as "unclean and unkempt." Liddy testified that the wood around the lock had been chipped; that chips of wood lay on the ground; and that the door had black scuff marks matching the color of Orchard's shoes. Liddy accused Orchard of breaking into Brunelle's apartment and drew a knife out of his pocket. The knife was a curved, lock-blade knife with a threeinch blade. Petrinski, then, came back into the hallway. Petrinski and Orchard explained they were looking for Petrinski's daughter. Liddy told them that she wasn't there and that they were not "going anywhere." Petrinski and Orchard described Liddy's behavior as wild and erratic. Liddy was pacing back and forth, putting the knife down and picking it back up, and telling them that he was crazy. Petrinski heard Liddy say that anyone who prevented Brunelle from seeing her daughter "would be hurting."
 {¶ 5} At this point Brunelle emerged from his apartment. Liddy and Brunelle asked Orchard for identification which he produced. Brunelle wrote this information down. At this point, a scuffle broke out during which Brunelle and Liddy punched and kicked Orchard. According to Brunelle, he told Orchard he could leave after taking down Orchard's information. Brunelle testified that, as Orchard was leaving, Orchard threw his shoulder into Liddy. Liddy testified that the fight began when Orchard reached into his pocket. Petrinski and Orchard testified that Liddy and Brunelle "jumped" Orchard. During the fight, Orchard suffered bruises and scrapes to his face.
 {¶ 6} Orchard fled from the house toward a nearby Convenient Food Mart. Brunelle returned to his apartment. Liddy entered the apartment to check on his nieces. He went back outside, took Petrinski's keys from her, threw them across the street and, then, chased after Orchard on foot. Liddy found Orchard in the Convenient store talking on the telephone. Liddy told one of the clerks to call the police and then returned to Brunelle's apartment. While returning to Brunelle's apartment, Officer Cahill received a dispatch of an assault at a Convenient store. Officer Cahill found Orchard at the store. Petrinski, who had retrieved her keys, arrived at the Convenient store shortly thereafter. Officer Cahill returned to Brunelle's apartment where he arrested Liddy and Brunelle. Liddy told Officer Cahill that he believed Orchard had been trying to break into the apartment and that he had pulled a knife on Orchard. Liddy also told Officer Cahill that the knife was hidden in a hat inside the apartment. Officer Cahill inspected the front door of the apartment but found no sign that it had been tampered with as Liddy was claiming.
 {¶ 7} On appeal, Liddy raises the following assignment of error: "The appellant's conviction for abduction is against the manifest weight of the evidence."
 {¶ 8} A challenge to the manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. "The weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St. 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Thompkins,78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring opinion).
 {¶ 9} In order to convict Liddy for abduction, the state was required to prove, beyond a reasonable doubt, that Liddy, "without privilege to do so * * * knowingly * * * [b]y force or threat, restrain[ed] the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear." R.C. 2905.02(A)(2). "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C.2901.01(12).
 {¶ 10} Liddy's argument on appeal is that the jury's finding that he was "without privilege" to restrain Orchard's and Petrinski's liberty is against the manifest weight of the evidence. Liddy derives his claim of privilege from R.C. 2935.04, which provides that "when * * * there is reasonable ground to believe that a felony has been committed, any person without warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him * * *." When a private person has made an arrest pursuant to R.C. 2935.04, he "shall forthwith take the person arrested before the most convenient judge or clerk of a court of record or before a magistrate, or deliver such person to an officer authorized to execute criminal warrants * * *." R.C. 2935.06.
 {¶ 11} For a private person to effect a valid citizen's arrest, and thus claim the privilege to lawfully detain, he must comply with the provisions of the statutes authorizing the arrest. State v. Rogers
(1975), 43 Ohio St.2d 28, 32 ("the policy of this court [is] to require strict compliance with the terms of a statute which authorizes arrest");State v. Odetellah (1993), 91 Ohio App.3d 787, 791 (a private person who detains a person suspected of theft "has responsibilities that are inseparable from the privilege"). In the present case, the issue of whether Liddy was "without privilege" to restrain Petrinski and Orchard turns on the reasonableness of Liddy's belief that Orchard was attempting to break into Brunelle's apartment and Liddy's compliance with the requirements of R.C. 2935.06 to "forthwith," i.e., within a reasonable time under the circumstances, deliver Orchard to the Geneva police.
 {¶ 12} Unchallenged evidence demonstrates that Liddy communicated his belief that Orchard was attempting to break into Brunelle's apartment to Orchard, Petrinski, and to the police as events were unfolding. As to the reasonableness of this belief, Liddy cites to Orchard's "unkempt and threatening" appearance, demonstrated by photographs taken on the day of the assault. Liddy also relies on his own testimony that he saw Orchard tampering with the deadbolt, corroborated by Brunelle's testimony that the apartment door showed signs of forced entry.
 {¶ 13} Orchard, on the contrary, denied touching the deadbolt or trying to force his way into the apartment. It is undisputed that Orchard told Liddy that the reason for his presence at Brunelle's apartment was to look for his niece. Officer Cahill testified that he inspected the apartment door and found no signs of attempted break in. According to Petrinski, Liddy was aware that she and her brother were there to look for Emily.
 {¶ 14} In light of this conflicting testimony, the jury did not lose its way by finding that Liddy did not have reasonable grounds to believe that Orchard was attempting to break into Brunelle's apartment. Orchard's testimony that he was not tampering with the door, Officer Cahill's testimony that there was no sign of tempering with the door and no wood chips on the floor, and the fact that Orchard told Liddy the reason he had come to Brunelle's apartment, renders Liddy's belief unreasonable.
 {¶ 15} There was also evidence before the jury that Liddy did not act with reasonable haste in attempting to notify the police that he had apprehended Orchard. Liddy and Brunelle held Petrinski and Orchard in the hallway for several minutes without contacting the police. After obtaining information from Orchard, Brunelle testified that Orchard was free to leave. At this point, the scuffle between Liddy, Brunelle, and Orchard intervened. Thereafter, Liddy choose to pursue Orchard. Liddy told the clerk at the convenience store, to which Orchard had fled, to call the police. Rather than stay with Orchard, Liddy returned to Brunelle's apartment. At no point did either Liddy or Brunelle call the police to report the attempted burglary, despite having the opportunity to do so.
 {¶ 16} Accordingly, we find there was substantial evidence upon which the jury could reasonably conclude that Liddy did not have reasonable grounds for believing that Orchard was trying to break into Brunelle's apartment, and that Liddy failed to comply with the statutory requirement to notify police as soon as reasonably possible. The finding that Liddy was "without privilege" to detain Petrinski and Orchard is not against the manifest weight of the evidence. Liddy's assignment of error is without merit.
 {¶ 17} For the foregoing reasons, Liddy's conviction for abduction in the Ashtabula County Court of Common Pleas is affirmed.
O'Neill, J., Rice, J., concur.