OPINION
{¶ 1} Appellant, Richard Bradley ("Bradley") appeals his conviction for one count of kidnapping, in violation of R.C.2905.01(A)(1) and (3) and 2905.01 (C), with a repeat violent offender specification. We affirm.
 {¶ 2} On December 14, 2003, at approximately 11:00 p.m., while on routine patrol near Perkins Park in Warren, Ohio, Patrolman Rich Kovach ("Officer Kovach") was flagged down by Bradley, who was walking in the vicinity of the park. Bradley reported to Officer Kovach that he was searching for Michael Guesman ("Guesman"), and requested assistance. Guesman, who was homeless, was a friend of Bradley's who had stayed in Bradley's home the previous night. Bradley told police that after Guesman had left his home that day, Bradley discovered that approximately twenty of his Oxycontin tablets, which had been prescribed to him for a work-related injury, were missing, and he believed that Guesman had stolen them. Police searched the Perkins Park area for Guesman, but failed to locate him. Since Bradley appeared to be under the influence of alcohol or drugs, Kovach suggested that Bradley try to "sober up" and come to the police station to file a formal report at a later time. Bradley told the police that he didn't have time and walked away.
 {¶ 3} The next morning, Bradley and co-defendant, Ted Phillips ("Phillips"), went to the home of Joe Wilfer, ("German Joe"), which was located on Kings Grave Road in Howland Township, Ohio. Bradley and Guesman first met at German Joe's house approximately three months earlier, and Bradley was aware that Guesman occasionally stayed there. When Bradley and Phillips arrived at the house, they parked Bradley's van around the corner off the street and went inside. Bradley and Phillips told German Joe what had occurred the previous evening and said that they were looking for Guesman and asked German Joe if he knew Guesman's whereabouts. As the men were preparing to leave, Guesman called German Joe and told him that he was coming out to the house. Upon hearing this, Bradley and Phillips retrieved Bradley's van, backed it in German Joe's garage, and closed the door.
 {¶ 4} When Guesman arrived, Bradley and Phillips appeared from another room with a .38 revolver and ordered him to lie down on the floor and demanded to know what Guesman had done with Bradley's Oxycontin. Bradley told Phillips to go out to the garage and get some things to tie Guesman's hands and ankles behind his back. Phillips returned and secured Guesman's hands behind his back with zip ties and bound his feet with electrical wire. While Guesman was lying helpless on the floor, the men searched his jacket and pants pockets. Guesman, who was wearing two pairs of pants at the time, then had one pair of pants pulled down around his ankles, and Bradley retrieved approximately $200 from the pockets of Guesman's inside pair of pants. Bradley took most of the money, giving Phillips $30. Bradley then began pistol-whipping Guesman around the head and face, and telling Guesman he was going to kill him if Guesman didn't give him his drugs back. Phillips then proceeded to kick Guesman in the ribs.
 {¶ 5} Guesman told Bradley and Phillips that he had taken the Oxycontin and that he was going to trade and sell it to get crack cocaine, and the pills were being stashed near Guesman's brother's place of employment in Mecca. Phillips then left the house for a short time to get some crack cocaine. After smoking the crack, Bradley had Guesman call Guesman's brother Alan, so that they could arrange to retrieve the Oxycontin. Bradley and Phillips then forced Guesman to crawl on his knees to the garage, where they helped him into the waiting van and left German Joe's house, with Phillips driving and Bradley and Guesman in the back.
 {¶ 6} The men then stopped at the Country Fair store in Howland, to purchase some beer and gas, and then proceeded toward Warren. En route, the van's transmission failed, and the men were forced to pull over at Christy's Market on Atlantic Street in Warren. Phillips went inside and called Walt Smith ("Smith") to see if they could secure another vehicle, since the van was inoperable.
 {¶ 7} Shortly thereafter, Walt Smith and his wife Jen, arrived at Christy's in a green GMC Jimmy. Smith then called Jeff Lamosek ("Lamosek"), Bradley's landlady's son, and asked Lamosek to pick him up. When Lamosek arrived, he walked to the van to bring Bradley a cell phone. Once inside the van, Lamosek observed Bradley sitting in the back and Guesman lying face down on the floor with a knit stocking cap pulled down over his face. Bradley told Lamosek that "this is the guy who stole from your house," and Phillips suggested to Lamosek that he should hit him, but Lamosek refused. Lamosek and the Smiths then left Christy's, and Bradley and Phillips proceeded to move Guesman from the van to the cargo area of the Jimmy and continued on their way to the Mosquito Lake area in Mecca Township, in Trumbull County, a distance of approximately twenty miles, where they were to meet up with Guesman's brother, Alan. En route, Bradley continued to threaten Guesman that he would take Guesman to jail or dump him in the lake.
 {¶ 8} Upon arriving in Mecca, Phillips dropped Bradley off at Mosquito Lake Four-by-Four, where Bradley was supposed to either recover the Oxycontin or the money Guesman received from selling it. Bradley instructed Phillips to drive around for a little while and then meet him back there. Before Phillips left, Bradley moved Guesman from the cargo area of the Jimmy to the floor between the front passenger seat and the backseat. Since the Jimmy was running low on gas, Phillips proceeded across the bridge and stopped at Cook's Market in Mecca circle to refuel. When Phillips was in the store paying for the gas, Guesman crawled out of the backseat and managed to get out of the vehicle, and began shouting for help and telling passersby that people were threatening to kill him. Phillips subsequently panicked, climbed back into the Jimmy, and drove back across the bridge to Monty's restaurant where he abandoned the Jimmy. Phillips found Bradley and told him that Guesman had escaped, and left on foot. Bradley subsequently walked back across the bridge toward Cook's market. By the time Bradley arrived at Cook's, police and paramedics had arrived on the scene. Bradley subsequently approached Deputy Sabulsky of the Trumbull County Sheriff's Department and told him that he was a victim of a crime and that the man being treated in the ambulance was the perpetrator. Bradley was then arrested and taken into custody. Bradley was in jail from December 15, 2003, the date of his arrest, until trial.
 {¶ 9} On January 24, 2004, Bradley's counsel filed a request for discovery and bill of particulars, including a request, "pursuant to Rule 16(B)(1)(d) to inspect and copy, or photograph any results or reports * * * of scientific tests or experiments made in connection with [the prosecution's] case."
 {¶ 10} On March 2, 2004, the State filed its answer to Bradley's request for discovery. Under Section D, entitled "Reports of Examinations and Tests," the answer stated that "[f]irearms testing and DNA testing taken in connection with this case and intended for trial will be provided as soon as the results of the same are made available to law enforcement." On the same date, a pretrial hearing was held in which the trial court indicated that it would grant a continuance of thirty to forty-five days in order to allow for the results of the DNA tests to be obtained. However, the trial court never journalized its order for continuance. In addition, the State filed its answer to Bradley's bill of particulars. After providing its response to Bradley's discovery request on March 2, 2004, the State filed its own discovery request, to which Bradley never responded.
 {¶ 11} On May 17, 2004, Bradley filed a Motion to Dismiss the charges against him, alleging a violation of his speedy trial rights.
 {¶ 12} A four-day jury trial commenced on May 24, 2004, and Bradley was convicted of one count of kidnapping and subsequently sentenced to ten years in prison. Pursuant to Crim.R. 23(A) and R.C. 2945.17, Bradley elected to have the repeat violent offender specification determined separately by the trial court without a jury. The trial court subsequently determined that Bradley was a repeat violent offender and sentenced Bradley to an additional three years in prison.
 {¶ 13} Bradley timely appealed, raising the following assignments of error:
 {¶ 14} "[1.] The trial court erred, as a matter of law, by denying Appellant's Motion to Dismiss based upon a clear violation of Appellant's speedy trial rights.
 {¶ 15} "[2.] Appellant's conviction for kidnapping is against the manifest weight of the evidence."
 {¶ 16} In his first assignment of error, Bradley alleges that his statutory speedy trial rights were violated. Bradley concedes that while his demand for discovery and a bill of particulars was a tolling event, he claims that he subsequently voluntarily waived discovery at the March 2, 2004 preliminary hearing, which meant that no further tolling should have occurred after that date, and any delay should have properly been charged to the State. Bradley argues that the postponement of his trial until May 24, 2004, violated his statutory right to a speedy trial under R.C. 2945.71, since he should have gone to trial no later than April 24, 2004, counting the days tolled which were chargeable to him. We disagree.
 {¶ 17} A criminal defendant's right to a speedy trial is guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution. State v. Taylor, 98 Ohio St.3d 27,2002-Ohio-7017, at ¶ 32; State v. Mullins 152 Ohio App.3d 83,2003-Ohio-477, at ¶ 8. The Ohio General Assembly codified a criminal defendant's speedy trial rights in R.C. 2945.71 and2945.72. State v. Blumensaadt, 11th Dist. No. 2000-L-107, 2001-Ohio-4317, at ¶ 34. The Supreme Court of Ohio has held that Ohio's speedy trial statutes are meant to be coextensive with the constitutional speedy trial guarantees. Id. citing State v.King (1994) 70 Ohio St.3d 158, 160.
 {¶ 18} R.C. 2945.71(C)(2) provides that an individual charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." Moreover, each day an individual charged with a criminal offense is incarcerated pending trial shall be counted as three days for the purposes of computing time under Ohio's speedy trial statute. R.C.2945.71(E). Ohio's speedy trial statute is "constitutional, mandatory, and must be strictly construed against the state."Blumensaadt, 2001-Ohio-4317, at ¶ 35, citing State v. Singer
(1977), 50 Ohio St.2d 103, 109. Thus, in order to avoid a prima facie case of a violation of a defendant's rights under the speedy trial statute, the state must commence trial within 90 days of arrest when the defendant is held in jail in lieu of bail. State v. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, at ¶14; State v. Howard (1992), 79 Ohio App.3d 705, 707. Furthermore, "[i]t is the responsibility of the trial court, with the assistance of the prosecuting attorney, to ensure that an accused is brought to trial within the mandatory time limits set forth in R.C. 2945.71." State v. Benson (1985),29 Ohio App.3d 321, 324. Failure to bring a case within the statutory time limits requires that a court dismiss the case, unless the state can demonstrate any tolling or extension of time under R.C.2945.72. Howard, 79 Ohio App.3d at 707, citing State v.Bowman (1987), 41 Ohio App.3d 318, 319.
 {¶ 19} "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71." Blumensaadt, 2001-Ohio-4317, at ¶ 35.
 {¶ 20} In the case sub judice, the record reveals that Bradley was arrested on December 15, 2003, and held in jail in lieu of bail from the time of his arrest until his trial began. Thus, under the express terms of R.C. 2945.71, the State had until March 15, 2004 to bring the case to trial. Trial commenced on May 24, 2004, which was 161 days from Bradley's arrest, since the day of the arrest does not count against the state for the purposes of determining whether a criminal defendant's speedy trial rights have been violated. State v. Gibson, 11th Dist. No. 2002-T-0055, 2003-Ohio-5695, at ¶ 13. Once a defendant, against whom a charge is pending, demonstrates that the requisite time under R.C. 2945.71 had elapsed without a trial, he has established a prima facie case for discharge under R.C.2945.73(B). State v. Geraldo (1983), 13 Ohio App.3d 27, at paragraph one of the syllabus. The burden is then on the State to show that sufficient time was tolled. Id. However, under the relevant sections of R.C. 2945.72, the statutory time period may be tolled for the following reasons:
 {¶ 21} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 22} "* * *
 {¶ 23} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." (Emphasis added).
 {¶ 24} Bradley concedes that he filed a request for discovery on January 29, 2004, and that this motion tolled the speedy trial period for a total of thirty-three days, from January 29 until March 2, 2004. See Brown, 98 Ohio St.3d 121, at syllabus ("A demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)."). However, Bradley claims that he waived the remainder of his discovery request at the pretrial hearing, which operated to end the tolling period. As a result of his alleged waiver, Bradley maintains that no further tolling should have been charged to him for his request for discovery, and the trial court's grant of a continuance of his trial until May 24, 2004 was sua sponte. Bradley further argues that absent a judgment entry from the trial court giving the reasons for the aforementioned continuance, his speedy trial rights were violated. We disagree.
 {¶ 25} Bradley's filing of the Motion to Dismiss on May 17, 2004, tolled the speedy trial date by an additional seven days. A defendant's filing of a motion to dismiss acts to toll the time in which he or she must be brought to trial. State v.Bickerstaff (1984), 10 Ohio St.3d 62, 67. Under normal circumstances, this time would be tolled until the court had an opportunity to rule on the motion. Id. However, since the case went to trial before the court ruled on the motion, only the seven day period from May 17, 2004, to May 24, 2004, are chargeable to Bradley.
 {¶ 26} At the March 2, 2004 pretrial hearing, Bradley argues that he expressed an intention to orally waive the remainder of his discovery request so that his case could go to trial on the scheduled date. While the language employed by defendant's counsel may be interpreted as conditional, we conclude, under the circumstances of this case, that the defendant orally waived the remainder of his discovery request. A criminal defendant may withdraw a discovery request either in part or in total at any time after it has been filed. State v. Allen, 10th Dist. No. 02AP-862, 2003-Ohio-1114, at ¶ 2 (defendant ordered his counsel to withdraw a previously filed request for discovery on the day of trial); United States v. Ali Rezaq (D.C. Cir. 1994),156 F.R.D. 514, 523-524; United States v. Hernandez (S.D.N.Y. 1995), 1995 U.S. Dist. LEXIS 6278, at *1; United States v.Allen (S.D.N.Y. 1981), 1981 U.S. Dist. LEXIS 14356, at *3. Bradley maintains that he received discovery on February 24, 2004, and waived any additional discovery on March 2, 2004. We agree. By waiving any additional discovery, the State fully complied with Bradley's discovery request.
 {¶ 27} Following the pretrial hearing, the State filed its own motion for discovery pursuant to Crim.R. 16. Bradley never responded to this request. Under 2945.72(D), the speedy trial period can be tolled for "[a]ny period of delay occasioned by the neglect or improper act of the accused." Courts in Ohio have repeatedly held that when the State lawfully requests reciprocal discovery from the defendant and the defendant fails to comply, the speedy trial time remains tolled and is charged to the defendant under R.D. 2945.72(D). State v. Saxon, 8th Dist. No. 83889, 2004-Ohio-5017, at ¶ 18; State v. Brummett, 4th Dist. No. 03CA5, 2004-Ohio-431, at ¶ 18 (citations omitted); State v.Christopher (Dec. 1, 1988), 8th Dist. No. 54331, 1988 Ohio App. LEXIS 4732, at *11-*13; State v. Larsen (Mar. 22, 1995), 9th Dist. No. 2363-M, 1995 Ohio App. LEXIS 1128, at *5-*6. Moreover, "[t]he Criminal Rules do not require the prosecutor to file a motion to compel discovery in an instance of defendant's neglect." State v. Borrero, 8th Dist. No. 82595, 2004-Ohio-739, at ¶ 15. Since Bradley failed to respond to the State's lawful discovery request, his speedy trial rights were not violated. Bradley's first assignment of error is without merit.
 {¶ 28} In his second assignment of error, Bradley argues that his conviction of kidnapping was against the manifest weight of the evidence. We disagree.
 {¶ 29} Manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.
 {¶ 30} Bradley argues that his conviction for kidnapping was against the manifest weight of the evidence, because he was merely trying to effectuate a citizen's arrest on Guesman for stealing his prescription medication. Bradley's argument strains credulity.
 {¶ 31} R.C. 2905.01(A) provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 32} "(3) To terrorize, or to inflict serious physical harm on the victim or another;
 {¶ 33} "* * *
 {¶ 34} "(C) [w]hoever violates this section is guilty of kidnapping * * *."
 {¶ 35} Uncontroverted evidence at trial shows that Bradley and his co-defendant, Ted Phillips, laid in wait for Guesman to arrive at German Joe's house. Once Guesman arrived, Bradley and Phillips forced Guesman to the floor and secured his hands and feet. Guesman was then beaten and kicked, and forced to crawl on his hands and knees to the waiting van. After the van became disabled, Guesman was transferred to another vehicle and driven a distance of approximately twenty miles to the Mosquito Lake area. Testimony was adduced at trial that Bradley threatened to dump Guesman into the lake if the drugs were not recovered. Witnesses who saw Guesman escape from the vehicle testified that Guesman was badly beaten and that he claimed his abductors had threatened to kill him.
 {¶ 36} Moreover, R.C. 2935.04, governing citizen's arrests, provides that "[w]hen a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."
 {¶ 37} In order for a private person to demonstrate a privilege to effectuate a citizen's arrest, "he must comply with the provisions of the statutes authorizing the arrest." State v.Liddy, 11th Dist. No. 2003-A-0048, 2005-Ohio-940, at ¶ 11 (citation omitted). R.C. 2935.06 defines the duty of a private person making an arrest, and requires that person to "forthwith * * * deliver the person to an officer authorized to execute criminal warrants who shall, without unnecessary delay, take such person before the court or magistrate having jurisdiction of the offense." We find, as a matter of law, that a detention lasting several hours, and including a twenty mile diversion to recover stolen drugs, with no evidence that the appellant sought police assistance at any time the detainee was in his custody, is clearly inconsistent with the statutes authorizing a citizen's arrest.
 {¶ 38} In light of the foregoing, we hold that the jury did not clearly lose its way or create a manifest miscarriage of justice by returning a guilty verdict for kidnapping against Bradley.
 {¶ 39} Accordingly, we affirm the judgment of the Trumbull County Court of Common Pleas.
Rice, J., concurs,
O'Neill, J., dissents with a Dissenting Opinion.