[Cite as *State v. McCallister*, 2014-Ohio-2041.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA3558 |
| v. | : | |
| | | <u>DECISION AND</u> |
| JOSHUA MCCALLISTER, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | RELEASED 05/12/2014 |

<u>APPEARANCES:</u>

John A. Gambill, Gambill Law LTD, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Matthew A. Wisecup, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Joshua McCallister, was found guilty of several drug possession offenses, possession of criminal tools, possession of chemicals for the manufacture of methamphetamine, and having a weapon while under disability after a jury trial in the Scioto County Common Pleas Court. The verdict resulted from the seizure of numerous items of contraband that police located after a search of a vehicle in which McCallister had been a passenger. On appeal, McCallister contends that the trial court erred by denying his motion to dismiss based on an alleged violation of his statutory speedy trial rights. However, McCallister's speedy trial time never expired because of several tolling events.

{¶ 2} McCallister also contends that the evidence introduced at trial is insufficient to support his convictions, or alternatively that the convictions are against the manifest weight of

the evidence. We disagree, because after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Further, a review of the entire record fails to persuade us that the jury lost its way or created a manifest miscarriage of justice. Accordingly, we affirm the judgment below.

{¶ 3} On the evening of January 9, 2012, an employee at the Advance Auto Parts store in New Boston, Ohio, contacted police to report possible criminal activity at the store. Patrolmen Kevin Lewis and Justin Bittinger of the New Boston Police Department responded to the call; and while at the store the officers confronted McCallister and Keith Chaffins about allegations that the pair had attempted to shoplift various items, including starting fluid. Upon asking Chaffins for identification, Patrolman Lewis observed that Chaffins had a large sum of money in his wallet, approximately $1,140. Chaffins first claimed that the money had come from a roofing job he had just completed. Given the time of year, Patrolman Lewis found this claim to be suspicious, and further questioned Chaffins about the money. Chaffins then claimed that he had just received his tax refund. Patrolman Lewis also found this response to be suspicious given the time of year. The officers then took the men outside to talk with them separately. While outside, Chaffins indicated that the white Chevrolet S-10 pick-up truck, that the pair drove to the auto parts store, actually belonged to his brother, Danny Patten. Notably, a similar vehicle had been reported to the New Boston Police Department earlier in the evening, as possibly being involved in drug activity outside the CVS Pharmacy in New Boston.[1] While speaking with Chaffins, Patrolman Lewis shined his flashlight into the bed of the truck and observed in plain sight, a duffle bag on the passenger side of the vehicle truck bed. Patrolman Lewis could see that the

---

[1] The earlier report noted possible drug activity by two males in a white Chevrolet S-10 parked in the CVS parking lot. However, the report noted that the vehicle had Ohio tags; while the vehicle parked at Advance Auto Parts had Kentucky tags.

duffle bag had an unzipped pocket, exposing multi-colored balloons and white pill tablets. Patrolman Lewis testified that balloons are commonly used to package and conceal drugs, and that he could see that one of the balloons actually had a white pill inside of it.

{¶ 4} While Patrolman Lewis interacted with Chaffins, Patrolman Bittinger dealt primarily with McCallister. According to Patrolman Bittinger, McCallister admitted that the he intended to shoplift items from the auto parts store. McCallister also dropped an orange syringe cap on the ground while speaking with Patrolman Bittinger.

{¶ 5} Ultimately, the Patrolmen decided to conduct a search of the pick-up truck. The search revealed a second duffle bag inside the cab of the truck that contained clear tubing; syringes, some containing a red liquid; and an aluminum soda can. Patrolman Lewis further found, in the cab of the truck, syringes; 10 unopened Claritin-D tablets; multiple plastic baggies; a D-cell battery with a false bottom that contained heroin and drug paraphernalia; Suboxone tablets, containing buprenorphine; an empty box of generic Sudafed; and vials containing an unknown liquid. Also, in the center console of the truck, Patrolman Lewis located an operational 9mm semi-automatic handgun, loaded with two hollow point rounds; a blue box containing a tourniquet; syringes; a sealed Fentanyl patch; a set of digital scales; a baggie of marijuana; a Ziploc baggie containing a white powder, later determined to be heroin; and plastic baggies with ying-yang symbols on them. Finally, green tablets later determined to be Clonazepam and five cell phones were found inside the truck; and 30 coffee filters were found in the bed of the truck. Following the search, McCallister and Chaffins were arrested and taken into custody.

{¶ 6} On April 3, 2012, the Scioto County Grand Jury returned separate indictments that charged McCallister and Chaffins with the following 9 counts: having a weapon while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2)/(3); possession of marijuana,

a minor misdemeanor, in violation of R.C. 2925.11(A)/(C)(3)(a); possession of criminal tools, being digital scales, a fifth-degree felony, in violation of R.C. 2923.24(A)/(C); aggravated possession of drugs, being Fentanyl, a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(1)(a); possession of drugs, being Buprenorphine, a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(2)(a); possession of drugs, being heroin, a fifth-degree felony, in violation of R.C. 2925.11(A)/(C)(6)(a); possession of drug paraphernalia, a fourth-degree misdemeanor, in violation of R.C. 2925.14(A)(12)/(F)(1); illegal possession of chemicals for the manufacture of methamphetamine, a third-degree felony, in violation of R.C. 2925.041; and possession of drugs, being Clonazepam, a fifth-degree felony, in violation of R.C 2925.11(A)/(C)(2)(a).

{¶ 7} McCallister was arrested and placed into custody on January 9, 2012, and remained in custody until his trial in May 2013. On May 20, 2013, immediately prior to the start of trial, McCallister filed a motion to dismiss, alleging that his statutory speedy trial rights had been violated. Thereafter, the parties stipulated to a timeline of the case and the stipulation was marked as Court Exhibit I. The motion to dismiss was overruled, the case proceeded to trial[2], and on May 21, 2013, the jury found McCallister guilty of all nine counts of the indictment. McCallister was thereafter sentenced to an aggregate prison term of 71 months. McCallister filed a timely notice of appeal.

{¶ 8} On appeal, McCallister asserts the following assignments of error:

First Assignment of Error:

> TRIAL COURT COMMITTED REVERSIBLE ERROOR [SIC] BY DENYING APPELLANT'S MOTION TO DISMISS, THEREBY VIOLATING HIS RIGHT TO A SPEEDY TRIAL AS GUARANTEED BY OHIO REVISED CODE SECTION 2945.71.

---

[2] The trials of McCallister and Chaffins were consolidated.

Second Assignment of Error:

> THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO
> CONVICT APPELLANT-DEFENDANT OF ALL NINE COUNTS OF THE
> INDICTMENT; OR IN THE ALTERNATIVE, THE CONVICTION WAS
> AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} In his first assignment of error, McCallister contends that his statutory speedy trial rights were violated. "Appellate review of a trial court's decision to deny a motion to dismiss based on statutory speedy trial grounds presents a mixed question of law and fact." *State v. Carr*, 4th Dist. Ross No. 12CA3358, 2013-Ohio-5312, ¶12, citing *State v. Nichols,* 4th Dist. Adams No. 12CA955, 2013–Ohio–308, ¶ 14. "We accept the trial court's findings of fact if they are supported by competent, credible evidence, but we independently review the court's application of the law to the facts." *Id.*

{¶ 10} Pursuant to R.C. 2945.71(D), "[a] person against whom one or more charges of different degrees, * * * all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged." Here, McCallister's highest degree of offense was a third-degree felony. R.C. 2945.71(C)(2) requires the State to bring a felony defendant to trial within 270 days of arrest. Each day that a defendant spends in jail "on the pending charge" counts as 3 days towards calculation of speedy trial time. R.C. 2945.71(E). "The Supreme Court of Ohio has 'imposed upon the prosecution and the trial courts the mandatory duty of complying' with the speedy trial statutes." *Carr* at ¶ 11, quoting *State v. Singer,* 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977). "Thus, we must strictly construe the speedy trial statutes against the State." *Id*., citing *Brecksville v. Cook,* 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶ 11} Failure to try the accused within the statutory time limit requires that he be discharged. R.C. 2945.73(B). "Upon establishing that more than 270 days has passed before trial,

a defendant establishes a prima facie case for dismissal based on a speedy trial violation." *State v. Davis*, 4th Dist. Scioto No. 12CA3506, 2013-Ohio-5311, ¶ 19. Once a defendant presents a prima facie case for dismissal, then the burden shifts to the State to prove that the limitations have not expired, either by showing that the time limit was extended by R.C. 2945.72, or by establishing that the accused is not entitled to the triple count provision in R.C. 2945.71(E). *Id*.; *Carr*, 2013-Ohio-5312 at ¶ 13; *State v. McGhee*, 4th Dist. Lawrence No. 04CA15, 2005-Ohio-1585, ¶ 39.

{¶ 12} In this case, approximately 496 days elapsed between the date of McCallister's arrest on January 9, 2012, and the date of trial, May 20, 2013. McCallister has thus established a prima facie case of a speedy trial violation; and the burden is on the State to show that a violation has not occurred.

{¶ 13} Under R.C. 2945.72, the time within which an accused must be brought to trial is extended by, among others, "(A) [a]ny period during which the accused is unavailable for * * * trial, by reason of other criminal proceedings against him, within or outside the state, * * *, provided that the prosecution exercises reasonable diligence to secure his availability[,]" "(D) [a]ny period of delay occasioned by the neglect or improper act of the accused[,]" "(E) [a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[,]" and "(H) [t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." "The State bears the burden to show that actions or events chargeable to the defendant have tolled enough time so that the defendant is tried within the speedy-trial period." *State v. Staffin*, 4th Dist. Ross No. 07CA2967, 2008-Ohio-338, ¶ 8, citing *State v. Whitt*, 4th Dist. Scioto No. 04CA2962, 2005-Ohio-5154, ¶ 16.

{¶ 14} In the case sub judice, the parties stipulated to a timeline of events for purposes of the motion to dismiss. In its judgment entry denying the motion, the trial court acknowledged the stipulation of the parties, found that the motion to dismiss was "not well taken", and overruled the motion. No other reasons for denying the motion were stated by the trial court. Thus, we must independently determine whether, when applying the law to the facts stipulated by the parties, McCallister was timely brought to trial.

{¶ 15} The parties stipulated that from January 10, 2012 to January 12, 2012, McCallister was arrested and incarcerated solely on the charges from the present case. When computing speedy trial time under R.C. 2945.71, we begin with the day after the date defendant was arrested. *Davis*, 2013-Ohio-5311 at ¶ 21. Thus from January 10, 2012 (the day after McCallister was arrested) to January 12, 2012, McCallister was held solely on the pending charges, and the triple count provision applies. For that time period, 9 days elapsed for speedy trial purposes.

{¶ 16} Next, the parties stipulated that from January 13, 2012 to February 19, 2012[3], McCallister was jailed on charges from the present case and on a post-release control "holder" from a prior criminal case. Where, in addition to the pending charges, a defendant is being held in jail and has a post-release control holder placed on him in a separate case, he is not entitled to the triple count provision. *State v. Brown*, 64 Ohio St.3d 476, 479, 597 N.E.2d 97 (1992); *State v. Beverly*, 4th Dist. Ross No. 04CA2809, 2005-Ohio-4954, ¶ 10; *McGhee*, 2005-Ohio-1585 at ¶ 39. Rather, an accused's speedy trial time runs on a one-to-one basis when he or she is being held on a holder. *State v. Midlam*, 2nd Dist. Greene No. 2012CA25, 2012-Ohio-5539, ¶ 8. Here, because McCallister was being held on an alleged post-release control violation, in addition to

---

[3] The actual stipulation was from 1/13/2012 to 2/20/2012. However, we note that the parties further stipulated that McCallister was incarcerated on his post-release control violation from 2/20/2012 to 7/6/2012. Thus, the stipulated dates overlap on 2/20/2012. Because overlapping dates should not be calculated in determining speedy trial time, we find that McCallister was in custody on the pending charges and the post-release control holder from 1/13/2012 to 2/19/2012.

the charges of the instant case, the triple count provision under R.C. 2945.71(E) did not apply for this time period. Thus, for speedy trial purposes, 38 days elapsed from January 13, 2012 to February 19, 2012.

{¶ 17} From February 20, 2012 to July 6, 2012, the parties stipulated that McCallister was incarcerated for violation of his post-release control. Pursuant to R.C. 2945.72(A) and R.C. 2941.401, where an accused is incarcerated on a violation of post-release control while the current charges remain pending, the running of the speeding trial period is tolled until his release from prison, so long as the accused did not file a notice of availability with the trial court and prosecuting attorney. *See* R.C. 2945.72(A); R.C. 2941.401; *State v. Vazquez*, 11th Dist. Ashtabula No. 2006-A-0073, 2007-Ohio-2433, ¶¶ 21, 32, 33; *State v. Stewart,* 2nd Dist. Montgomery No. 21462, 2006-Ohio-4164, ¶ 22 ("the great weight of authority * * * support[s] * * * the proposition that once a person under indictment has begun serving a prison sentence in another case, the provisions of R.C. 2941.401 apply, to the exclusion of the provisions in R.C. 2945.71, et seq., so that the running of speedy trial time under the latter statute is tolled"). Moreover, McCallister does not challenge the State's proposition that time tolled while he was incarcerated on his post-release control violation. Thus, we find that the speedy trial time was tolled during this period of incarceration.

{¶ 18} After he served his time on the post-release control violation, McCallister remained in jail in lieu of bond on the charges from the instant case. Thus, from July 7, 2012 to July 24, 2012, when the McCallister filed his demand for discovery, the triple count provision applies. During this time period, 54 days elapsed for speedy trial purposes.

{¶ 19} The parties stipulated that on July 24, 2012, McCallister filed his demand for discovery; and that the State filed its response to discovery and requested reciprocal discovery on

August 1, 2012. The filing of a discovery request is a tolling event under R.C. 2945.72(E). *State v. Preston*, 4th Dist. Jackson No. 10CA4, 2013-Ohio-5679, ¶ 10, citing *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶¶ 21-23. Thus, the speedy trial clock stopped until August 1, 2012, when the State filed its response to the discovery request.

{¶ 20} From August 1, 2012 to September 19, 2012, when McCallister filed his motion to dismiss/motion to suppress[4], the record is relatively inactive. However, it is undisputed that McCallister did not respond to the State's request for reciprocal discovery during this time period. In fact, McCallister did not respond to the State's request for discovery until May 1, 2013. A defendant's unreasonable delay in responding to discovery requested by the prosecution tolls speedy trial time. *Davis*, 2013-Ohio-5311 at ¶ 23, fn. 3, citing R.C. 2945.72(D) and *State v. Bradley*, 11th Dist. Trumbull No. 2004-T-0080, 2005-Ohio-6572, ¶ 27. "Moreover, '[t]he Criminal Rules do not require the prosecutor to file a motion to compel discovery in an instance of defendant's neglect.' " *Bradley* at ¶ 27, quoting *State v. Borrero,* 8th Dist. Cuyahoga No. 82595, 2004-Ohio-739, ¶ 15.

{¶ 21} This Court has previously determined that the failure of a defendant to respond to the State's discovery request within 42 days of the request is an unreasonable delay. *State v. Brummett*, 4th Dist. Highland No. 03CA5, 2004-Ohio-431, ¶ 19. The State suggests, in its brief, that 30 days is a reasonable amount of time for a defendant to respond to a reciprocal request for discovery. The State also notes that the Scioto County Court of Common Pleas' Rules of Practice

---

[4] The parties stipulated below that McCallister filed a motion to dismiss/motion to suppress on 9/19/2012, and that the trial court filed an entry overruling the motions on 4/29/2013. The State argues that the delay in ruling on the motions was reasonable given the complexity of the case, and thus the entire time period should be tolled against McCallister pursuant to R.C. 2945.72(E). McCallister argues that the State's request to continue a second hearing on the motion to suppress due to the assistant prosecutor's pre-planned vacation was unreasonable, and thus the time between the originally scheduled second hearing date, and the date that the hearing was actually held, should not be tolled against him. However, a determination of these issues is unnecessary because, as will be discussed, there are sufficient tolling events in the record that completely encompass the time taken by the trial court to determine McCallister's motion to dismiss/motion to suppress.

require a defendant to answer the State's reciprocal discovery request within 7 days. With the foregoing in mind, we conclude that the speedy trial clock continued to run for the first 30 days following the reciprocal request. Furthermore, because McCallister remained in jail during that period, the triple count provision applied. Thus, 90 days elapsed for speedy trial purposes. However, the speedy trial clock was tolled on August 31, 2012 (the 31st day after the request), because of McCallister's neglect, and remained stopped until May 1, 2013, when he eventually responded to the discovery request.

{¶ 22} From May 1, 2013 to May 20, 2013, the parties stipulated that McCallister remained jailed on the pending charges in lieu of bond. The trial was originally scheduled for May 6, 2013, but was continued at the State's request because one of its necessary witnesses, forensic scientist Jeffrey Houser, had been previously subpoenaed to testify in other cases in other counties for the full week of May 6, 2013. The entry granting the continuance stated the State's reason for its request and remarked that "[t]he speedy trial provisions of R.C. 2945.71 are tolled pursuant to Ohio Revised Code Section 2945.72(H)."

{¶ 23} Under R.C. 2945.72(H), speedy trial time tolls for the period of any "reasonable continuance granted other than upon the accused's own motion." "The reasonableness of a continuance is determined by examining the purpose and length of the continuance as specified in the record." *State v. Smith*, 4th Dist. Ross No. 10CA3148, 2011-Ohio-602, ¶ 27. This Court has previously held that the unavailability of a material witness due to the witness receiving a prior subpoena from another court is a reasonable ground for granting a continuance. *Smith* at ¶ 32. Thus, the justification for the continuance in the instant case was reasonable. Moreover given the time constraints and complexity of trial court dockets, 14 days is a reasonable length of time to continue a jury trial. *See Smith* at ¶ 29 (finding that a 45 day continuance is reasonable).

Therefore, the speedy trial clock ran from May 1, 2013 to May 5, 2013, elapsing 5 days; tripled because McCallister remained jailed for a total of 15 days. However, time tolled on May 6, 2013, under R.C. 2945.72(H), and remained tolled until the trial commenced on May 20, 2013.

{¶ 24} In summary, in calculating McCallister's speedy trial time, and construing the extensions of time permitted by R.C. 2945.72 most strongly against the State, we charge the State with the following periods of time: January 10, 2012 to January 12, 2012, 3 days, counted as 9 due to McCallister's incarceration; January 13, 2012 to February 19, 2012, 38 days; July 7, 2012 to July 24, 2012, 18 days, counted as 54 due to McCallister's incarceration; August 1, 2012 to August 30, 2012, 30 days, counted as 90 due to McCallister's incarceration; and May 1, 2013 to May 5, 2013, 5 days, counted as 15 due to McCallister's incarceration. Thus, considering the various tolling factors, we find that 206 days passed from McCallister's arrest to the day trial commenced. Accordingly, we overrule McCallister's first assignment of error.

{¶ 25} In his second assignment of error, McCallister contends that his convictions should be overturned because they are not supported by sufficient evidence, or alternatively, are against the manifest weight of the evidence. Specifically, McCallister argues that he was merely a passenger in the truck, did not own the truck, and was unaware of the contraband located in the center console of the truck. Thus, McCallister contends that the State failed to prove that he possessed the items located in the center console of the vehicle. Because McCallister limits his challenge to the element of whether he possessed the items, we limit our review accordingly.

{¶ 26} The "arguments concerning the 'sufficiency' and 'manifest weight' of the evidence present two distinct legal concepts." *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12. "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed,

reasonably could support a finding of guilt beyond a reasonable doubt." *Id*. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 27} Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 28} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 60. "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id*. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *E.g., State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31.

{¶ 29} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) *Davis*, 2013-Ohio-1504 at ¶ 14. "A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Id*. at ¶ 15.

{¶ 30} For the drug possession charges, the State had to present evidence that McCallister knowingly obtained, possessed, or used the controlled substances, i.e. the drugs located throughout the vehicle. R.C. 2925.11. For the having a weapon under disability charge, the State had to present evidence that McCallister knowingly acquired, had, carried, or used the firearm located in the center console. R.C. 2923.13. For the possessing criminal tools charge, the State needed to prove that McCallister possessed or controlled the digital scales located in the center console with the purpose to use it criminally. R.C. 2923.24. For the possession of drug paraphernalia charge, the State needed to present evidence that McCallister knowingly possessed with purpose to use, drug paraphernalia, i.e. the hypodermic needles located throughout the vehicle. R.C. 2925.14. And for the illegal possession of chemicals for the manufacture of methamphetamine charge, the State had to present evidence that McCallister knowingly possessed one or more chemicals that may be used to manufacture methamphetamine with the intent to manufacture methamphetamine. R.C. 2925.041.

{¶ 31} The crux of McCallister's argument is that the State failed to prove possession, even constructive possession. As this Court has previously explained:

> Possession may be actual or constructive. Actual possession exists when the

circumstances indicate that an individual has or had an item within his immediate physical possession. Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession. For constructive possession to exist, it must also be shown that the person was conscious of the presence of the object. Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.

(Citations, quotations, and brackets omitted.) *State v. Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.). Furthermore, constructive possession may be established by circumstantial evidence, and two or more persons may have joint constructive possession of a particular item. *State v. Griffin*, 4th Dist. Scioto No. 12CA3484, 2013-Ohio-3309, ¶ 24; *State v. Durr*, 4th Dist. Scioto No. 11CA3411, 2012-Ohio-4691, ¶ 45.

{¶ 32} Despite McCallister's contentions to the contrary, the State did present sufficient evidence that could support a finding of joint constructive possession of the contraband located in the pick-up truck. Besides the recitation of facts expressed above, additional testimony supports the conclusion that McCallister knew about the contraband located throughout the vehicle, including the contraband located in the center console, and that he had the ability to exercise dominion and control over the contraband. For instance, Shawn Lawhun, an employee at Advance Auto Parts in New Boston, testified that he saw Chaffins and McCallister arrive together in the white S-10 pick-up truck at around 8 p.m. on January 9, 2012. He further testified

that the men appeared to be "doped up." He also observed the men attempt to steal starter fluid, and other products. In his voluntary police statement, admitted as evidence at trial, Lawhun indicated that Chaffins was the driver of the vehicle, and McCallister was seated in the passenger seat.

{¶ 33} Joseph Amburgey, a pharmacist at CVS Pharmacy in New Boston, testified that McCallister purchased 2.4 grams of pseudoephedrine from the store on January 9, 2012, at 6:32 p.m. Ami Weiler, a patron of the same CVS Pharmacy, testified that she was at the store at approximately 7:00 p.m. on January 9, 2012, when she witnessed two males in a white S-10 pick-up truck with a white powdery substance sitting on the console between the driver and passenger seats. Ms. Weiler was so concerned about what she saw, that she reported the incident to the police.

{¶ 34} Melissa Patten testified that Chaffins purchased the white S-10 pick-up from her husband in December 2011. She further testified that she and her husband cleaned the entire vehicle before delivering it to Chaffins and left no personal belongings inside the vehicle. Danny Patten testified he sold Chaffins the vehicle on Christmas Eve 2011. He also testified that he cleared all personal belongings from the truck, including from the center console of the truck, before delivering it to Chaffins. Finally, he testified that he is not Chaffins' brother, and is not related to Chaffins in any way.

{¶ 35} John Koch, a Sergeant with the Southern Ohio Drug Task Force, testified that plastic tubing, aluminum cans, pseudoephedrine[5], coffee filters, starting fluid, plastic baggies, digital scales, syringes, and tourniquets are all items used in the manufacture, sale, or use of methamphetamine. Sergeant Koch also testified that a review of an online database confirmed that McCallister had purchased 2.4 grams of Claritin-D on January 9, 2012, at 6:32 p.m.

---

[5] Sergeant Koch testified that Claritin-D contains pseudoephedrine.

{¶ 36} Finally, Patrolman Bittinger testified that during his initial encounter with McCallister, prior to the search of the vehicle, McCallister asked permission on several occasions to retrieve a cigarette from the inside of the S-10 pick-up truck, and was anxious to get inside of the truck.

{¶ 37} Besides the above evidence, the jury could have also considered the abundance of contraband located in the vehicle, some of which was plainly visible and should have been readily apparent to McCallister. "The presence of such a vast amount of drug evidence in the car supports an inference that the appellant knew about the presence of the drugs and the he, along with his [co-defendant], exercised control over each of the items found." *State v. Riggs,* 4th Dist. Washington No. 98CA39, 1999 WL 727952, *5 (Sept. 13, 1999), citing *State v. Soto,* 8th Dist. Cuyahoga No. 57301, 1990 WL 145651 (Oct. 4, 1990). Thus, considering all of the evidence, especially in a light most favorable to the prosecution, we conclude that there was sufficient evidence to support the conclusion that McCallister had constructive, joint possession over the contents of the vehicle.

{¶ 38} Moreover, the weight of the evidence supports the finding that McCallister had joint possession of the contraband. McCallister was seen exiting the vehicle with Chaffins just prior to the search. He had purchased pseudoephedrine just hours prior to the search of the vehicle, presumably the same Claritin-D that was found inside the vehicle; and the pair had attempted to steal starting fluid, another key ingredient in the production of methamphetamine. McCallister also appeared to be under the influence of drugs; attempted to enter the vehicle upon the arrival of law enforcement; had a syringe cap on his person; and matched the description of the CVS eyewitness.

{¶ 39} Thus, viewing the evidence in its totality, and deferring to the jury's credibility determinations, we cannot conclude that this is an exceptional case that requires reversal, or that the jury clearly lost its way. Accordingly, McCallister's second assignment of error is overruled.

{¶ 40} McCallister's assignments of error are overruled and the judgment of the Scioto County Common Pleas Court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Harsha, J.: Concur in Judgment & Opinion.

                                    For the Court

                                    By:_____
                                         Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.