DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas, following the filing of a motion to suppress by appellee, Earl Grandberry, in which the trial court granted appellee's motion in part and denied it in part. On appeal appellant, the state of Ohio, sets forth the following two assignments of error: *Page 2 
 {¶ 2} "Assignment of error number one: The trial court erred in granting appellee's motion to suppress because appellee lacked the requisite standing to challenge the search of the apartment.
 {¶ 3} "Assignment of error number two: The trial court erred in granting appellee's motion to suppress because Miranda was not applicable."
 {¶ 4} The relevant, undisputed facts are as follows. On January 25, 2007, appellee was arrested by Sandusky Police Detectives Danny Lewis and Jack Austin, and Perkins Police Detective Vince Donald, after a pat-down search yielded a small bag of marijuana and a digital scale. Based on statements given by a confidential informant and appellee, the detectives searched a nearby apartment, where they found a bag containing marijuana belonging to appellee. The detectives then took appellee to the Sandusky Police Station, where a more thorough search of appellee's person turned up $3,364 in cash and two cell phones.
 {¶ 5} On April 13, 2007, appellee was indicted by the Erie County Grand Jury on one count of possession of marijuana pursuant to R.C.2925.11, a fifth degree felony, preparation of marijuana for sale in violation of R.C. 2929.03, a third degree felony, and possession of criminal tools in violation of R.C. 2923.24, a fifth degree felony. The indictment also contained a forfeiture specification for the $3,344 in cash.
 {¶ 6} On August 17, 2007, appellee filed a motion to suppress appellee's statements at the scene, as well as all evidence obtained from searching the apartment. On September 25, 2007, the state filed a response, in which it argued that the *Page 3 
circumstances of appellee's arrest indicated that appellee's constitutional rights were not violated. On October 19, 2007, a suppression hearing was held, at which testimony was presented by Detective Lewis.
 {¶ 7} Lewis testified at the hearing that he, Austin, and Donald went to an apartment complex on Remington Avenue, in response to a tip from a confidential informant. He stated that, based on the tip, the detectives expected to find appellee selling marijuana out of one of the apartments in the complex. However, upon arriving at the complex, they observed appellee and another man, Eugene Dunfee, sitting in a vehicle that was parked two doors down from the building identified by the informant.
 {¶ 8} Austin stated that, upon seeing the detectives approaching, appellee exited the vehicle and began walking down the street. Austin then proceeded to speak to appellee regarding an odor of marijuana that was emanating from the vehicle. He also asked appellee what he doing at the complex, to which appellee responded that he was "just visiting." Austin further stated that, during a "pat down" search, appellee volunteered that he had some marijuana in his pocket. Austin testified that the search produced a small amount of marijuana and a digital scale disguised as a compact disc. Appellee was then arrested and placed in the back of a police vehicle.
 {¶ 9} Austin stated that, while he was searching appellee, Detective Lewis noticed Dunfee, who remained in the vehicle, hiding something between his legs. Dunfee was taken out of the vehicle, and a bag of marijuana was found on his person. Dunfee then was cited and allowed to leave. *Page 4 
 {¶ 10} Austin testified that, based on further information supplied by appellee, the detectives proceeded to apartment number 13, where they were greeted at the door by Thinethia Jeter. Austin further testified that, while speaking to Jeter, the detectives noticed a strong odor of marijuana inside the apartment. Jeter told the detectives that appellee sometimes came to the apartment to visit her daughter. Austin stated that Jeter consented to a search of the apartment, which yielded a bag containing marijuana, which Jeter said belonged to appellee.
 {¶ 11} On cross-examination, Austin testified that he was not in uniform on the day of appellee's arrest; however, each of the detectives wore a police badge on his hip, and a blue jacket which had the word "Police," emblazoned on the back and above the right front pocket. Austin further testified that he believed the confidential informant was reliable, because she had purchased marijuana from appellee on prior occasions. Austin stated that his suspicions initially were aroused because appellee was with Dunfee, and because appellee attempted to walk away from the officers. Austin further stated that Dunfee's vehicle was not stopped for a traffic violation.
 {¶ 12} In addition to Austin's testimony at the suppression hearing, the trial court reviewed an investigative report filed by Austin on January 26, 2007. In his report, Austin stated that, after the marijuana and digital scale were discovered on appellee's person, appellee was asked why he was in the area. Austin stated that appellee responded by saying "he was just visiting friends in apt. # 13." Austin further stated in his report *Page 5 
that, based on appellee's statement, Lewis and Donald went to apartment 13, where a search led to discovery of the bag of marijuana in a bedroom closet.
 {¶ 13} On October 24, 2007, the trial court issued a judgment entry in which it granted appellee's motion to suppress in part, and denied it in part. Specifically, the trial court found that the detectives were not constitutionally prohibited from approaching appellee and questioning him about his reason for being in the area. In addition, the trial court found that, after the officers noticed an odor of marijuana coming from the vehicle appellee had just exited, they had probable cause to suspect illegal behavior and, thereafter, to search appellee. The trial court further found that, after finding the marijuana and digital scale, the detectives placed appellee under arrest, after which they questioned appellee further about his reason for being in the neighborhood. Appellee answered that he was visiting friends in "apartment # 13."
 {¶ 14} Ultimately, the trial court concluded that appellee's statements before the marijuana was discovered were admissible, as were the marijuana and the digital scale. However, appellee's subsequent statement that he was visiting someone in "apartment # 13," was illegally obtained because appellee was not given the prescribedMiranda warnings. Therefore, that statement, along with the evidence found in Jeter's apartment, was inadmissible. Appellee's motion to suppress was granted in part, and denied in part. On October 26, 2007, the state filed a timely notice of appeal.
 {¶ 15} In its second assignment of error, the state asserts that the trial court erred by suppressing appellee's statements regarding apartment number 13, as well as the *Page 6 
evidence taken from Jeter's apartment. In support, the state argues that appellee voluntarily told police he was "just visiting" prior to the discovery of the marijuana and digital scale. The state further argues that the detectives had ample cause to search apartment number 13 without appellee's statement, since the confidential informant told them appellee was selling drugs from one of the units in the complex.
 {¶ 16} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.
 {¶ 17} It is well-settled that when the police take a suspect into custody, they are required to give Miranda warnings before subjecting the suspect to interrogation. State v. Gumm (1995), 73 Ohio St.3d 413,429; State v. Roe (1989), 41 Ohio St.3d 18, 21; Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. "A suspect must be informed of his right to remain silent, that his statements may be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an *Page 7 
attorney, one will be appointed on his behalf prior to questioning."State v. Dumas, 7th Dist. No. 06 MA 36, 2008-Ohio-872, ¶ 17, citingState v. Taylor (Mar. 23, 2001), 11th Dist. No. 99-P-0071.
 {¶ 18} "Where a custodial interrogation exists, the State bears the burden of establishing compliance with Miranda and a waiver of the defendant's Miranda rights. State v. Parrish, Montgomery App. No. 21091,2006-Ohio-2677, ¶ 21. But the threshold burden of demonstrating the existence of a custodial interrogation rests with the defendant. * * *."State v. Muncy, 2d Dist. No. 21563, 2007-Ohio-1675, fn. 1. Ultimately, statements that are elicited by police through custodial interrogation in violation of a suspect's Miranda rights cannot be introduced at trial as evidence of his guilt. Berkemer v. McCarty (1984), 468 U.S. 420, 428,104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 19} In this case, it is undisputed that appellee was in police custody after the discovery of marijuana and a digital scale in his pocket. It is further undisputed that Miranda warnings were not given to appellee at any time. Accordingly, appellee met his threshold burden. In response, the state argues that the trial court erred by considering the contents of Austin's police report, since Austin's testimony at the hearing was "in conflict" with the report. Specifically, the state argues that Austin testified at the hearing that appellee was not questioned after he was taken into custody, while the report states that, after he was arrested, appellee told the detectives he was visiting apartment number 13. We disagree with the state's argument, for the following reasons. *Page 8 
 {¶ 20} First, pursuant to Crim.R. 12(F), the trial court may decide a motion to suppress "based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." As set forth above, Austin's police report recounts appellee's statements made after the marijuana and digital scale were discovered. In addition, as noted by the trial court, the "facts" portion of the state's memorandum in opposition to the motion to suppress contains the following relevant account of appellee's arrest, which was taken almost verbatim from the police report:
 {¶ 21} "Detectives began to pat defendant down for officer safety when defendant volunteered that he had marijuana in his coat pocket. The marijuana was seized and a digital scale was further located in defendant's coat pocket. Defendant was placed under arrest for the marijuana and the scale containing marijuana residue. Defendant was asked what he was doing in the area and defendant indicated that he was in the area visiting friends at Apartment 13. Detectives proceeded to make contact with the resident of apartment #13 and met with Thinethia Jeter (hereinafter `Jeter'). Jeter gave detectives consent to search her apartment. Detectives located a white bag with two separate bags of marijuana in it inside an upstairs bedroom closet. * * * Jeter informed detectives that defendant came to her residence the day before and dropped the bag off. * * *"
 {¶ 22} Second, contrary to the state's assertion, the transcript shows that, after finding the marijuana, Austin advised appellee that "he was under arrest," after which appellee "was placed in the back of a police cruiser that [the detectives] had called to the *Page 9 
scene." Austin did not testify that no questions were posed to appellee after he was placed in custody.
 {¶ 23} This court has considered the entire record that was before the trial court and, upon consideration thereof, finds that the state has not demonstrated the existence of a "conflict" between Austin's testimony at the suppression hearing and the content of police report, upon which the trial court also properly relied pursuant to Crim.R. 12(F). Accordingly, the trial court did not err by suppressing appellee's statements regarding apartment number 13, along with the evidence obtained as a result of the search of the apartment. The state's second assignment of error is, therefore, not well-taken.
 {¶ 24} In its first assignment of error, the state asserts that appellee did not have standing to challenge the search of Jeter's apartment. In support, the state argues that appellee did not live in the apartment and, therefore, failed to demonstrate that he had a reasonable expectation of privacy that was violated by the search. Accordingly, any evidence seized from Jeter's apartment was admissible against appellee in court.
 {¶ 25} Upon consideration of the record and our determination as to the state's second assignment of error, we find that it is irrelevant whether or not appellee had standing to challenge the search of Jeter's apartment. Accordingly, the state's first assignment of error is moot and not well-taken.
 {¶ 26} The judgment of the Erie County Court of Common Pleas is affirmed. Appellant, the state of Ohio, is ordered to pay the costs of this appeal pursuant to App.R. *Page 10 
24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., concur. *Page 1