[Cite as *State v. Konneh*, 2018-Ohio-1239.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-17-007

    Appellee                                      Trial Court No. 2016 CR 400

v.

Sherique A. Konneh                              **DECISION AND JUDGMENT**

    Appellant                                     Decided:  March 30, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Sheirque A. Konneh, appeals the January 5, 2017

judgment of the Wood County Court of Common Pleas.  For the following reasons, we

affirm, in part, and reverse, in part, the trial court judgment.

## I. Background

{¶ 2} On August 9, 2016, Ohio State Highway Patrol Sergeant Stacy Arnold and border patrol agents Chris Damshen and Thomas Payne were patrolling a stretch of I-80 in Sergeant Arnold's cruiser. They were parked at the crossover near mile marker 62, in Wood County, Ohio, when they observed a Kia Optima traveling noticeably below the speed limit in the middle lane of traffic. After the vehicle passed, Sergeant Arnold exited the crossover to further observe the driver's behavior and to run a registration check of the license plate.

{¶ 3} Sergeant Arnold noticed that the driver was sitting at a straight 90-degree angle while his seat was slightly reclined. His hands were at the 10:00 and 2:00 position on the steering wheel, his elbows were locked straight, and his eyes remained fixed on the road in front of him, never turning to look in her direction. Initially, there did not appear to be a passenger in the vehicle, but as Sergeant Arnold drove up alongside the vehicle, she observed that the seat was reclined and the passenger was in the lying-down position.

{¶ 4} As the officers continued to observe the vehicle, it drifted into the far right lane, over the dotted divider line, then back into the middle lane without the driver activating his turn signal. Sergeant Arnold initiated a traffic stop.

{¶ 5} Sergeant Arnold exited her vehicle and waved for the driver to do the same. They approached one another and Sergeant Arnold asked for his license. He presented her with a Pennsylvania license bearing the name Sheirque Konneh, but the driver did not

2.

resemble the photograph on the license. She asked the driver twice if the license, in fact, was his, and he insisted that it was. Sergeant Arnold then approached the passenger side of the vehicle. She observed a strong odor of cologne emanating from the vehicle and saw a cologne bottle on the passenger's lap. Agent Damshen told her that he saw the passenger spray the cologne.

{¶ 6} Sergeant Arnold ultimately learned that the passenger was Sheirque Konneh. The driver was Francois Beauvogui. Konneh gave Beauvogui the license to present to the officer because Beauvogui's license was suspended. Sergeant Arnold also learned that the Kia Optima was a rental vehicle. The paperwork showed that the rental expired on July 28, 2016, but Konneh said that he had extended the rental. Beauvogui was not listed as an additional driver on the rental agreement.

{¶ 7} Shortly after initiating the stop, Sergeant Arnold and the two border control agents were joined by Trooper Ryan Stewart and his K-9, Oso. They had just completed a traffic stop a couple of miles back. Trooper Stewart stopped to make sure that everything was okay. Sergeant Arnold requested that he walk Oso around the vehicle. Konneh was asked to exit the vehicle, and when he did so, he inadvertently popped the trunk open. Sergeant Arnold observed what appeared to be the type of container that would hold antifreeze or weed killer, completely encased in gray duct tape. She closed the trunk.

3.

{¶ 8} The K-9 circled the vehicle and alerted to the rear corner of the vehicle. Sergeant Arnold observed what appeared to be marijuana residue on the floorboard. She pulled the vehicle further off the side of the road so that a probable cause search could be conducted.

{¶ 9} Both the interior and the trunk of the vehicle were searched. Four-hundred and fifty dollars was found in the driver's side door. Numerous items were found in the trunk, including black dye; rubber bands; rubber gloves; cotton balls; chlorine tablets; hospital masks; paper towels; glass vials with liquid in them; tape; dryer sheets; air freshener; a white, powdery substance; a box cutter; a black light; aluminum foil; Elmer's glue; a roll of saran wrap; envelopes; gray duct tape; clear packing tape; trash bags; and iodine. There were also pieces of black paper and pieces of white paper cut into the size of U.S. currency; plain white paper; and a bundle of currency-sized, black paper wrapped in saran wrap. One of the pieces of white, currency-sized paper was found in a book; the remainder was found in an envelope. In all, more than 18 pounds of black currency-sized paper were found in the vehicle.

{¶ 10} The duct-tape-wrapped jug that Sergeant Arnold saw when Konneh inadvertently popped the trunk was more closely examined. In fact, it was two jugs taped together. The top of the second jug was cut off and the bottom was taped directly beneath the first jug. With the duct tape encasing both of them, it created what appeared to be one long jug with two bottoms. The jug smelled of bleach and chlorine.

4.

{¶ 11} The cash found in the driver's side door included four $100 bills. The security strips on the bills were green; they should have been blue. In addition to that, it was discovered that by shining a black light on the white paper found in the vehicle, a perfect imprint of a $100 bill appeared.

{¶ 12} The officers were not sure what to make of what they had found, but they suspected a currency-related crime. Trooper Stewart contacted the U.S. Secret Service, the agency responsible for investigating currency-related crimes, and spoke to Agent Steve Snyder. He and his supervisor, Scott Anderson, met them at the Bowling Green station.

{¶ 13} Konneh contended during questioning that the black paper was used to wash black jeans that had faded. But the Secret Service suspected that Konneh was involved in a scheme known as a "black money scam." The scam was described by Special Agent Snyder:

> [In a black money scam, the perpetrators] are looking for victims who are naïve in a way, usually elderly or people who are maybe looking for that quick cash. And so they come up with this money and they try to convince the person, either through email or through a phone call, that they have a large amount of this money that had to be colored to get it through the customs process here in the United States. But, they want to show them the money so they usually meet up with the victim and show them that they

5.

have a special chemical that they can use to get the black off the money—

quote money—and it can then be used and they will give them a share of

that.

    The scam usually goes that they will show a little bit of the

chemical, show maybe one or two bills, either through slight [sic] of hand

or changing it out and actually produce a real genuine bill that then was

purported to be washed or cleaned with that chemical.  They are asking the

victim, "I need two thousand dollars or four thousand dollars to get more of

this chemical so we can wash all of the money and that money can be

yours.["]

Agent Snyder explained that the jug is used as a prop in this scheme as a container for

mixing chemicals.

{¶ 14} Konneh was charged on August 10, 2016, with forgery, a violation of R.C.

2913.31(A)(3) and (C)(1)(b), and possessing criminal tools, a violation of R.C.

2923.24(A).  A preliminary hearing took place in the Perrysburg Municipal Court, and

the court found probable cause as to the possession-of-criminal-tools charge, but not as to

the forgery charge.  The case was bound over to the Wood County Court of Common

Pleas and presented to the grand jury.

{¶ 15} On September 8, 2016, Konneh was indicted on one count of forgery, a

fifth-degree felony, in Wood County case No. 2016 CR 0400.  He entered a plea of not

guilty and executed a speedy trial waiver on September 23, 2016.  On October 20, 2016,

he was indicted on one count of possessing criminal tools, also a fifth-degree felony, in

6.

Wood County case No. 2016 CR 0514. Konneh entered a plea of not guilty on November 2, 2016. Over his objection, the trial court granted the state's motion to join the two cases.

{¶ 16} The case was tried to a jury on November 14, 2016, and Konneh was convicted of both counts. The court sentenced Konneh to a jail term of 180 days on each count, to be served concurrently. Konneh timely appealed and assigns the following errors for our review:

> First Assignment of Error: The Trial Court Erred When It Denied Appellant's Motion to Suppress.
>
> Second Assignment of Error: The Trial Court Erred When It Denied Appellant's Motion to Dismiss the Possession of Criminal Tools Charge.
>
> Third Assignment of Error: The Trial Court Erred By Allowing Improper Evidence Before the Jury.
>
> Fourth Assignment of Error: The Offenses Appellant Was Convicted of Were Allied Offenses of Similar Import and Subject to Merger.
>
> Fifth Assignment of Error: The Evidence at Appellant's Trial Was Insufficient to Support the Convictions, and appellant's Convictions Are Against the Manifest Weight of the Evidence.

## II. Law and Analysis

{¶ 17} Konneh argues that the trial court erred when it denied his motion to suppress evidence arising from the August 9, 2016 traffic stop and the questioning that

7.

occurred during that stop. He claims that the state failed to timely bring him to trial on the possession-of-criminal-tools charge, thus the charge should have been dismissed. He contends that the trial court erred by failing to exclude allegedly prejudicial photographs depicting a Qur'an and a prayer mat. He maintains that his possession-of-criminal-tools and forgery convictions should have merged. And he insists that the evidence was insufficient to support his convictions and that his convictions were against the manifest weight of the evidence.

{¶ 18} Before addressing Konneh's assignments of error, we briefly address a preliminary issue raised by the state. Specifically, the state claims that Konneh's appeal is moot because Konneh has completed his sentence and will suffer no collateral disability or loss of civil rights as a result of his conviction. The state urges that Konneh, a foreign national who has permanent resident status in the United States, already cannot hold public office, serve on a jury, or vote. Thus, the state claims, he will not suffer a collateral disability as a result of his felony convictions, and his appeal is moot. The state maintains that any collateral disability is "theoretical" and "not something concrete."

{¶ 19} In support of its position, the state cites *State v. Wilson*, 41 Ohio St.2d 236, 238, 325 N.E.2d 236 (1975), which held that "where a defendant has voluntarily paid a fine in satisfaction of a judgment, evidence must be offered from which an inference can be drawn that he suffers some collateral disability apart from the sentence * * * in order for the defendant to have a right of appeal." The Ohio Supreme Court clarified in *State v. Golston*, 71 Ohio St.3d 224, 226-228, 643 N.E.2d 109 (1994), however, that *Wilson* applies only where the appellant has been convicted of a misdemeanor. It held:

8.

Given the numerous adverse collateral consequences imposed upon convicted felons, it is clear to us that a person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her. Therefore, an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal. The collateral legal consequences associated with a felony conviction are severe and obvious. Thus, a convicted felon, who has completed his or her sentence during the pendency of an appeal from the felony conviction, need not present evidence that he or she will suffer some collateral legal disability or loss of civil rights in order to maintain the appeal. In this regard, we specifically disapprove of [*State v.*] *Williams, supra*, 80 Ohio App.3d 542, 609 N.E.2d 1307 [1992], which improperly extended the rule of *Wilson* and [*State v.*] *Berndt*[, 29 Ohio St.3d 3, 504 N.E.2d 712 (1987)] to cases involving appeals from felony convictions. *Id.* at 227.

{¶ 20} Accordingly, we reject the state's position that Konneh's appeal is moot, and we proceed to consider his assignments of error.

## A. Motion to Suppress

{¶ 21} Before trial, Konneh filed a motion to suppress evidence, arguing that Sergeant Arnold lacked reasonable articulable suspicion to initiate the traffic stop, and

that he was subjected to a custodial interrogation without first having his *Miranda* rights explained to him. The trial court denied Konneh's motion. Konneh argues that this was error.

{¶ 22} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 23} "In order to conduct an investigative stop of a motor vehicle, a police officer must have an articulable and reasonable suspicion that the motorist is engaged in criminal activity or is operating his vehicle in violation of the law." *City of Sylvania v. Comeau*, 6th Dist. Lucas No. L-01-1232, 2002-Ohio-529, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Konneh claims that drifting across lanes is not a traffic offense justifying a traffic stop. He argues that the traffic stop here was pretextual, as further evidenced by the fact that no citation was issued for the purported violation.

{¶ 24} Under R.C. 4511.33(A)(1), "[a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made

10.

with safety." We have recognized that a driver does not violate R.C. 4511.33 by weaving *within* one's own lane or driving *on* the demarcating lines, but he does violate R.C. 4511.33 when he travels completely *across* the lane marking. *State v. Baker*, 6th Dist. Wood No. WD-13-074, 2014-Ohio-2564, ¶ 8-9; *State v. Frase*, 6th Dist. Lucas No. L-10-1075, 2011-Ohio-966, ¶ 27. Konneh is, therefore, incorrect that drifting across lanes does not constitute a traffic violation.

{¶ 25} "[W]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996); *see also State v. McEldowney*, 2d Dist. Clark No. 06-CA-138, 2007-Ohio-6690, ¶ 38 ("[E]vidence of a defendant's marked lane violation establishes reasonable suspicion or probable cause for a traffic stop."). The officer need not issue a traffic citation to render the stop valid. *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 13-14.

{¶ 26} Here, both Sergeant Arnold's testimony and a review of the recording from the camera installed on the dashboard of the cruiser make clear that the tires of the Kia Optima completely crossed the lines demarcating the middle lane from the right lane. Accordingly, there was reasonable, articulable suspicion for initiating the traffic stop.

{¶ 27} Konneh also argues that statements that he made in response to questions during the traffic stop should have been suppressed because they were made pursuant to a

11.

custodial interrogation and he was not first advised of his *Miranda* rights. Specifically, Konneh responded to questions about ownership of certain items found in the trunk of the car.

{¶ 28} "A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution." *State v. Coleman*, 7th Dist. Mahoning No. 06 MA 41, 2007-Ohio-1573, ¶ 15. "[T]he state may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege against self-incrimination." *Id.* Where a defendant has been subjected to a custodial interrogation, the state bears the burden of establishing that those procedural safeguards have been employed. *State v. Grandberry*, 6th Dist. Erie No. E-07-058, 2008-Ohio-1960, ¶ 18. "But the threshold burden of demonstrating the existence of a custodial interrogation rests with the defendant." *Id.,* quoting *State v. Muncy,* 2d Dist. Montgomery No. 21563, 2007-Ohio-1675, fn. 1.

{¶ 29} Although roadside questioning of a motorist is not generally considered a custodial interrogation, a motorist who has been detained pursuant to a traffic stop may thereafter be subjected to treatment that renders him "in custody" for practical purposes. *Coleman* at ¶ 20. Whether a motorist has been subjected to a custodial interrogation is a fact-specific inquiry. *City of Cleveland v. Oles*, Slip Opinion No. 2017-Ohio-5834, ¶ 21. There is no bright-line test. *Id.* at ¶ 22. The totality of the circumstances must be considered, even where the motorist has been placed in the police cruiser. *Id.* at ¶ 21, 31. Factors such as the significance of the intrusion, the length of the questioning, and the

12.

tone of the interaction must be examined. *Id.* at ¶ 24. And courts have considered a number of circumstances, such as whether there was a pat-down, whether the motorist was handcuffed, whether the questioning was overrepetitive, whether the motorist was allowed to keep his or her keys, and whether the motorist objected to any of the questioning. *Id.* at ¶ 14-19. The question in these cases is not whether the motorist felt "free to leave," but whether the situation "exert[ed] upon [the] detained person pressures that sufficiently impair[ed] his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at ¶ 31.

{¶ 30} Here, a hearing was held on Konneh's motion to suppress, and Sergeant Arnold was examined. Very few details were elicited from her pertinent to the circumstances of Konneh's questioning. The only detail Konneh offers is Sergeant Arnold's concession that he was not free to leave. As previously indicated, this fact alone is not sufficient to demonstrate that Konneh was subjected to a custodial interrogation. And no other facts have been asserted to support a claim that Konneh's questioning was tantamount to a custodial interrogation, therefore, Konneh has failed in his initial burden. Accordingly, we find no error in the trial court's denial of Konneh's motion to suppress.

{¶ 31} Because Sergeant Arnold had reasonable, articulable suspicion to initiate the traffic stop, and because Konneh was not subjected to a custodial interrogation, we find Konneh's first assignment of error not well-taken.

13.

## B. Speedy Trial

{¶ 32} Konneh was charged with possession of criminal tools, a violation of R.C. 2923.24(A), a fifth-degree felony. Under R.C. 2945.71(C)(2), the state was required to bring Konneh to trial on this charge within 270 days of his arrest. But because Konneh was in custody from the time of his arrest until the time of trial, each day he was held counted as three days. R.C. 2945.71(E). The incident giving rise to both this charge and the forgery charge occurred on August 9, 2016. Trial took place on November 14, 2016. In his second assignment of error, Konneh argues that this charge should have been dismissed for violation of the speedy-trial statute.

{¶ 33} The timeline of events pertinent to Konneh's speedy-trial argument is as follows:

- August 9, 2016: Konneh was arrested.

- September 8, 2016: Konneh was indicted on the forgery charge in case No. 2016 CR 0400.

- September 26, 2016: Konneh waived speedy trial requirements in case No. 2016 CR 0400.

- October 17, 2016: Konneh filed a motion to suppress in case No. 2016 CR 0400.

- October 20, 2016: Konneh was indicted on the possession-of-criminal-tools charge in case No. 2016 CR 0514.

14.

- November 1, 2016: The court orally granted the state's motion to join case Nos. 2016 CR 0400 and 2016 CR 0514 over Konneh's objection.

- November 2, 2016: The judgment entry ordering joinder of the cases was journalized.

- November 10, 2016: The court conducted a hearing on Konneh's motion to suppress, and Konneh moved in limine to preclude certain evidence at trial.

- November 14, 2016: Konneh moved to dismiss the possession-of-criminal-tools charge in case No. 2016 CR 0514 for violation of his right to a speedy trial. The trial court denied his motion, and both cases were tried to a jury.

{¶ 34} "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. * * * If a defendant demonstrates that his or her speedy-trial right has been violated, he or she may seek dismissal of the criminal charges." *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10, citing R.C. 2945.73.

{¶ 35} There are circumstances under which a person's speedy-trial time may be waived or the period tolled. *Id.* at ¶ 11, citing R.C. 2945.72; *State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (2004). The Ohio Supreme Court has recognized that "[w]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not

applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989), syllabus.

{¶ 36} The state does not contend that Konneh waived application of the speedy-trial statute with respect to the possession-of-criminal-tools charge by executing a waiver in the forgery case. Rather, it argues that the motion to suppress filed in the forgery case operated to toll the speedy-trial time with respect to both charges even though the motion was filed before the indictment was issued in case No. 2016 CR 0514.

{¶ 37} We addressed a substantially similar issue in *State v. Homan*, 6th Dist. Erie No. E-97-100, 1999 Ohio App. LEXIS 2134, *17 (May 14, 1999). There, the appellant was arrested and charged with driving under the influence. She filed a waiver of time and subsequently, a motion to suppress. About five weeks later, she was indicted on the charge of child endangering—stemming from the same incident—under a separate case number. The cases were tried together. On appeal, Homan argued that her right to a speedy trial was violated because she was not tried on the child-endangering charge within 90 days. The state contended that the motion to suppress filed with respect to the driving-under-the-influence charge tolled the time for speedy-trial purposes. We rejected the state's position. We held that the motion to suppress filed before appellant had even been indicted on the child-endangering charge did not toll the time for bringing her to trial on the second charge.

{¶ 38} The state appealed our ruling, but the Ohio Supreme Court affirmed. *State v. Homan*, 89 Ohio St.3d 421, 424, 732 N.E.2d 952, *superseded by statute on other*

16.

*grounds as stated in State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155. It held that "[w]hen a criminal defendant files a pretrial motion and the state later files against the defendant additional, related criminal charges, R.C. 2945.72(E) does not extend the time within which the defendant must be brought to trial on those additional charges." *Id.* at paragraph two of the syllabus.

{¶ 39} In now claiming that the motion to suppress tolled time on the possession-of-criminal-tools charge, the state relies on the Ohio Supreme Court's decision in *Blackburn,* 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319. In *Blackburn,* the defendant was indicted in case number one on charges of illegal conveyance of weapons or prohibited items onto the grounds of a detention facility or institution, in violation of R.C. 2921.36. The state voluntarily dismissed the case without prejudice.

{¶ 40} Two months later, in case number two, the state charged the defendant with violation of R.C. 2921.36 and conspiracy. The defendant requested discovery, which tolled the speedy-trial clock, and also filed a motion for continuance because he had retained new counsel. The motion included language that defendant was waiving his speedy-trial right for the period of time resulting from the continuance. At the state's request, the court dismissed the indictment without prejudice.

{¶ 41} Finally, two months later, the state filed case number three, this time charging defendant with trafficking in drugs and conspiracy. The charges in all three cases stemmed from the same set of facts.

{¶ 42} Defendant claimed that his right to a speedy trial was violated because the state failed to bring him to trial within 270 days. The court ultimately held, however, that

17.

the delay resulting from the motion for continuance filed in case number two could be included in calculating the speedy-trial time in case number three. The syllabus of the opinion states that "[i]n calculating the time within which a criminal defendant must be brought to trial under R.C. 2945.71, periods of delay resulting from motions filed by the defendant in a previous case also apply in a subsequent case in which there are different charges based on the same underlying facts and circumstances of the previous case."

{¶ 43} At first glance, *Blackburn* would appear to support the state's position that Konneh's motion to suppress tolled the speedy-trial time on the possession-of-criminal-tools charge. Importantly, however, the Ohio Supreme Court specifically did *not* overrule *Homan,* 89 Ohio St.3d 421, 732 N.E.2d 952, when it decided *Blackburn.* Instead, it was careful to distinguish it. It looked at the nature of the motion at issue and found that "[u]nlike Homan's tactical decision to file a motion to suppress, Blackburn filed the motion to continue the trial to allow his newly hired counsel time to prepare." *Blackburn* at ¶ 20. *Homan,* therefore, remains good law. *See State v. Henrick*, 9th Dist. Summit No. 24771, 2010-Ohio-877, ¶ 26 ("Had the *Blackburn* court wished to overrule *Homan* it could have done so.").

{¶ 44} Here—as in *Homan*—Konneh made the tactical decision to file a motion to suppress in case No. 2016 CR 0400 before he was indicted for possession of criminal tools in case No. 2016 CR 0514. That motion, therefore, did not operate to toll the time for bringing him to trial on the possession-of-criminal-tools charge. As such, the state failed to bring Konneh to trial within the time required by R.C. 2945.71(C)(2).

18.

**{¶ 45}** Finally, the state claims that Konneh waived this issue on appeal because he failed to renew his objection to the joinder of the cases. Konneh does not allege error in the joinder of the cases; he alleges error in the denial of his motion to dismiss for violation of his right to a speedy trial. Konneh has not waived error.

**{¶ 46}** We find Konneh's second assignment of error well-taken.

## C. Allowing Improper Evidence Before the Jury

**{¶ 47}** In his third assignment of error, Konneh claims that the trial court abused its discretion when it admitted into evidence exhibit 5 (depicting, among other things, a picture of a Qur'an found in Konneh's briefcase) and exhibit 18 (depicting the contents of a backpack which included a prayer rug). Konneh insists that the evidence was not relevant and that it was offered to inform the jury that Konneh is Muslim. He maintains that in "today's current climate with respect to Islamic terrorism, this evidence was prejudicial."

**{¶ 48}** The state denies that the exhibits were offered to inject Konneh's religious beliefs into the case. It contends that the pictures were introduced to show the various items found in the rental vehicle, and it emphasizes that the items depicted in the photograph were never identified for the jury; the jury would have to independently recognize the religious significance of the items.

**{¶ 49}** Under Evid.R. 402, relevant evidence is generally admissible, and evidence that is not relevant is not admissible. Under Evid.R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "[T]he

19.

admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 50} The photos at issue here were two of 31 photos depicting the car and its various contents. The Qur'an is pictured in an open brief case next to the book in which officers found a piece of the currency-sized paper being used as a bookmark. The prayer rug—which could be mistaken for a blanket—was hanging out of a backpack. In authenticating the photographs at trial, the state asked no questions eliciting a response that would identify the items as a Qur'an and prayer mat. The state did not highlight the evidence or reference Konneh's religion. We agree with the state that the pictures were relevant and no undue prejudice resulted from their admission.

{¶ 51} We find Konneh's third assignment of error not well-taken.

### D. Allied Offenses of Similar Import

{¶ 52} Given our conclusion that the speedy-trial statute was violated with respect to the possession-of-criminal-tools charge, we need not consider whether the trial court erred in failing to merge this conviction with his forgery conviction.

### E. Sufficiency and Manifest Weight

{¶ 53} In his fifth assignment of error, Konneh argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the

20.

evidence. He argues that the state failed to present evidence establishing that the objects found in the car belonged to him. He maintains that without actual physical possession of the items, the state was required to prove constructive possession. He points out that both he and Beauvogui were occupants of the vehicle, and the vehicle was a rental. He insists that without evidence establishing that he possessed the "criminal tools" found in the car, the state, by extension, cannot show beyond a reasonable doubt that he committed forgery.

{¶ 54} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 55} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a

21.

'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 56} We have already determined that Konneh's motion to dismiss the possession-of-criminal-tools charge should have been granted because his right to a speedy trial was violated. Accordingly, we need only address his assignment of error with respect to his forgery conviction.

{¶ 57} R.C. 2913.31(A)(3) provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or *possess* with purpose to utter, any writing that the person knows to have been forged." (Italics added.) Konneh's sole argument in support of this assignment of error is that the state failed to prove that he possessed the criminal tools here, and that possession of those tools was essential to the forgery conviction. The state responds that it need only prove constructive possession, and a majority of districts hold that constructive possession is properly established where the accused is an occupant in a vehicle in which contraband has been discovered. Moreover, the state claims, Konneh offered an explanation for the use of the black paper, thus acknowledging that the paper belonged to him. It also points out that it was Konneh who rented the vehicle.

{¶ 58} Constructive possession occurs when a person "'knowingly exercises dominion and control over an object, even though that object may not be within his

22.

immediate physical possession.'" *In re Israel D.*, 6th Dist. Sandusky No. S-95-024, 1996 Ohio App. LEXIS 2493, *10-11 (June 21, 1996), quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982). While close proximity to contraband alone is insufficient to prove constructive possession, it can be used as circumstantial evidence of constructive possession. *Id.,* citing *State v. Chapman*, 73 Ohio App.3d 132, 138, 596 N.E.2d 612 (3d Dist.1992).

{¶ 59} Ohio courts have held that two or more persons may have joint constructive possession of a particular item. *State v. McCallister*, 4th Dist. Scioto No. 13CA3558, 2014-Ohio-2041, ¶ 31. "Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." (Citations omitted.) *State v. Gilbert*, 9th Dist. Medina No. 11CA0076-M, 2012-Ohio-4090, ¶ 11.

{¶ 60} "Constructive possession of contraband may be inferred from 'the surrounding facts and circumstances, including the defendant's actions.'" *State v. Washington*, 6th Dist. Ottawa No. OT-12-032, 2014-Ohio-1008, ¶ 31, quoting *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, 922 N.E.2d 248, ¶ 28 (10th Dist). For instance, "furtive movements in an automobile may provide sufficient indicia of dominion or control over contraband, allowing an inference of constructive possession." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 20, quoting *State v. Riggs*, 4th Dist. Washington No. 98CA39, 1999 Ohio App. LEXIS 4327, *5 (Sept. 13, 1999). Moreover, the presence of a "vast amount" of contraband in a car may support an inference that the appellant knew about the presence of the contraband and that he exercised control over the items along with others in the vehicle. *McCallister* at ¶ 37.

23.

{¶ 61} Here, the state presented evidence that Konneh was a passenger in the vehicle, that he identified the briefcase as belonging to him, that he offered an explanation for possessing the black paper, and that he rented the vehicle. It also presented evidence that Konneh sprayed cologne in the car as the officers approached the vehicle. This uncontroverted testimony was sufficient evidence of constructive possession of the items found in the vehicle. Accordingly, Konneh's sufficiency and manifest-weight challenges fail.

{¶ 62} We, therefore, find Konneh's fifth assignment of error not well-taken.

### III. Conclusion

{¶ 63} We find that the vehicle in which Konneh was a passenger was properly stopped and searched, and that his right against self-incrimination was not violated by the roadside questions posed to him by officers during the stop. We, therefore, find his first assignment of error not well-taken.

{¶ 64} We find that the motion to suppress, filed before he was indicted on the possession-of-criminal-tools charge, did not operate to toll the speedy-trial time. As such, the state failed to bring Konneh to trial on this charge within the time required by R.C. 2945.71(C)(2). We, therefore, find his second assignment of error well-taken. We vacate his conviction for possession of criminal tools.

{¶ 65} We find no error in the trial court's decision to admit exhibits 5 and 18. The photos were relevant and no unfair prejudice resulted from their admission. We, therefore, find Konneh's third assignment of error not well-taken.

24.

**{¶ 66}** We need not address Konneh's fourth assignment of error given our resolution of his second assignment of error.

**{¶ 67}** And we find that Konneh's forgery conviction was supported by sufficient evidence and was not against the manifest weight of the evidence because the state presented uncontroverted evidence demonstrating constructive possession of the items found in the vehicle. We, therefore, find his fifth assignment of error not well-taken.

**{¶ 68}** We affirm, in part, and reverse, in part, the January 5, 2017 judgment of the Wood County Court of Common Pleas. In doing so, we vacate Konneh's conviction for violation of R.C. 2923.24. The costs of this appeal are assessed to the state under App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                             _____

                                                                          JUDGE

Thomas J. Osowik, J.

                                                                    _____

Christine E. Mayle, P.J.                                   JUDGE
CONCUR.

                                                                    _____

                                                                     JUDGE